THE STATE OF KANSAS, *Appellee*, v. JOHN TANNYHILL
AND ROBERT KELLER, *Appellants*.

No. 18,418.

SYLLABUS BY THE COURT.

ATTACHMENT—*Obstructing the Execution of Process.* Where
an officer seizes personal property upon attachment and de-
livers it to a custodian to be held subject to his order, a
stranger to the writ who claims to own the property, and
makes demand for it upon the custodian, is not guilty of ob-
structing the execution of process, whatever his motives may
have been, where he employs no deceit and the property is
voluntarily delivered in response to his demand.·

Appeal from Shawnee district court, division No. 2;
GEORGE H. WHITCOMB, judge. Opinion filed October 11,
1913. Reversed.

*A. E. Crane, F. T. Woodburn,* and *E. D. Woodburn,*
all of Holton, for the appellants.

*John S. Dawson,* attorney-general, and *W. E. Atchi-
son,* county attorney, for the appellee.

The opinion of the court was delivered by

MASON, J.: John Tannyhill and Robert Keller appeal
from a conviction under the statute making it a mis-
demeanor to "wilfully obstruct, resist or oppose any
sheriff or any other ministerial officer in the service or
execution or in the attempt to serve or execute any
writ, warrant or process." (Gen. Stat. 1909, § 2657.)

The complaint upon which the conviction was had
charged that the defendants willfully resisted, ob-
structed and opposed the marshal of the court of To-
peka in executing a writ of attachment, "by forcibly
and violently taking from the possession and control of
one Jerry Estes, duly appointed and designated by this
affiant [the marshal] to hold·possession of said prop-

erty for this affiant as the marshal of said court three head of horses, . . . which were theretofore attached by said marshal through his deputies as the property of John Tannyhill and held by Jerry Estes as custodian for this affiant as said marshal, without the consent of this affiant and under the protest of said Jerry Estes."

The evidence seems to establish the following facts beyond substantial controversy: Under an order of attachment against John Tannyhill, the marshal seized three horses as his property, and left them in charge of Jerry Estes. Robert Keller claimed to own the horses. He went with Tannyhill to a justice of the peace and asked for a writ of replevin to recover them. He gave a cost bond and a replevin bond and made a replevin affidavit. The justice issued an order of delivery against Estes and gave it to a constable, but said that before it was served a demand for the return of the property should be made. The constable, Tannyhill and Keller then went to the home of Estes. Keller demanded the horses of Estes, stating that he owned them and wanted them. Estes asked if he had "the papers" for them and Keller said he had—that he had given bond for them. Keller and Tannyhill then took the horses and drove them away. Estes either affirmatively consented that they should do so, or remained passive, there being a conflict of testimony on this point; he did not object or protest.

The jury were instructed to convict if they found that the defendants willfully obstructed the marshal in the execution of the writ—that is, that they removed the horses with the intention of obstructing the officer in the discharge of his duty. In a different state of the evidence this instruction might be deemed to cover the subject sufficiently. But here we think a more specific statement was necessary to insure a proper conception of the issues by the jury. Under all the testimony there

was room to find that the defendants purposely misled Estes into the belief that the horses were being taken from him upon legal process; but there was also room to find that Estes was informed that Keller had obtained a writ of replevin, under which the horses would be taken unless he gave them up voluntarily, and that he surrendered them with a full understanding of the actual situation. The defendants admitted demanding and receiving the horses from Estes, and this act, in a sense, resulted in obstructing the execution of the attachment. To justify a conviction, however, it was incumbent upon the state to prove further, not only that the defendants were actuated by a purpose to obstruct the execution of the writ, but also either that Estes did not consent to the removal of the horses, or that his consent, if given, was procured by fraud or duress. The trial court refused an instruction requested by the defendants in these words:

"If you find from the evidence that the defendant Robert Keller was the owner of the horses attached and that he brought a replevin action in justice court to recover the possession of them; that he went to make a demand for them from the party then in possession before the service of summons was made upon the defendant in the replevin action and that the party in possession turned over the horses to the defendant pursuant to such demand, then you must acquit the defendants."

We think such an instruction or its equivalent should have been given, possibly with the qualification that acquiescence in the demand should not have been induced by fraud or duress. In some jurisdictions it is held that the owner of personal property which is seized under a writ in a proceeding to which he is not a party may regain possession if he can do so without a breach of the peace. (2 Freeman on Executions, 3d ed., § 254, p. 1419.) But the usual and better rule is that, at least where the officer is acting in good faith

The State v. Tannyhill.

and upon reasonable grounds, any forcible interference with his possession, even on the part of the real owner of the property, who is a stranger to the writ, constitutes the offense of obstructing the execution of legal process. (29 Cyc. 1330; 2 Freeman on Executions, 3d ed., § 254, pp. 1420, 1421; Note, 75 Am. Dec. 176, 180; Reference note, 24 Am. St. Rep. 747; Reference note, 49 L. R. A. 773.) Public policy requires, in the interest of the orderly settlement of disputes, that an officer's possession of property, even when wrongful, shall not be forcibly interfered with. But no such consideration forbids the owner of property, which has been wrongfully taken as that of another, to demand its possession from the person in immediate control, or to accept it if the demand is acceded to by the custodian.

The jury were properly instructed that if Keller had obtained possession of the property by replevin this could not have been made the foundation of a criminal prosecution, although it resulted in obstructing the marshal, because such procedure would be lawful and regular. We think the defendants were also entitled to an instruction that possession obtained by demand made upon the custodian, without deceit or duress, and acquiesced in by him, would stand upon the same footing. The jury were told, in substance, that if a demand was made on Estes and he surrendered the horses in pursuance of instructions from the marshal, this would constitute a defense. We think the effect would be the same, irrespective of the instructions given by the marshal. The owner of goods seized on a writ against some one else may maintain replevin against the individual in whose hands he finds them, without joining the officer. (*Engel v. Dado,* 66 Neb. 400, 92 N. W. 629; Cobbey on Replevin, 2d ed., § 443.) "The action must be brought against the person having the actual, physical possession of the property, although he may be

keeping it for another person." (Shinn on Replevin, § 164.) A demand on the defendant is a proper if not necessary preliminary to the action, and if it is acceded to there can be no occasion for serving an order of delivery.

The judgment is reversed and the cause remanded for further proceedings.